**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Tammy Hampton, on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Underlining, Inc., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No.: **1:26-cv-02488** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Now comes Plaintiff Tammy Hampton, by and through her attorneys Equal Access Law Group PLLC, respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 55(b)(2), for entry of default judgment against Defendant Underlining, Inc., ("Defendant") and in support states as follows:

**PROCEDURAL BACKGROUND**

1. Plaintiff filed this action on March 5, 2026, asserting claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–89. (ECF No. 1).

2. Defendant was properly served through its registered agent on March 17, 2026. (ECF No. 6).

3. Defendant failed to answer, appear, or otherwise respond to the Complaint.

4. On April 10, 2026, through a status report, Plaintiff moved for entry of default. (ECF No. 9). On April 14, 2026, this Court entered default pursuant to Rule 55(a) and directed Plaintiff to file a motion for default judgment by April 27, 2026. (ECF No. 10).

5. Plaintiff now timely moves for default judgment.

1 of 8

## ARGUMENT

**A. Liability Under Title III of the ADA**

6. Plaintiff specifically attempted to browse and purchase gel manicure kits on Defendant's Website. (Compl. ¶¶ 35(a)-(j), 40). However, Plaintiff was prevented from completing a transaction due to numerous accessibility barriers that interfered with his ability to effectively navigate and use the Website with a screen reader. *Id*. The Website contained improperly defined heading structures, making it difficult to understand the organization of content, and interactive elements that were not properly labeled or programmatically defined, causing confusion as to their function. *Id*. The navigation menu expanded automatically and could not be collapsed using keyboard commands, forcing Plaintiff to navigate through repetitive content. *Id*. Additionally, links and product images lacked meaningful alternative text or descriptive labels, preventing Plaintiff from distinguishing between items or understanding their purpose. *Id*. Certain actions, such as performing a search, did not provide screen reader feedback or confirmation messages, leaving Plaintiff uncertain whether the action was successful. Id. Further, unexpected changes in content—such as automatic pop-ups—caused disorientation. *Id*. These barriers collectively denied Plaintiff the ability to independently navigate the Website and complete a purchase in the same manner as sighted users. *Id*.

7. Once default is entered, all well-pleaded allegations in the Complaint, except those relating to damages, are deemed admitted. *See e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007).

8. Plaintiff is legally blind, and Plaintiff relies on and uses a screen-reading software and screen reader technology to access websites. When attempting to navigate Defendant's

website, Plaintiff was unable to access core features, such as product sizing and purchase functionality, due to the absence of accessible coding elements like image alt text, keyboard navigability, and properly labeled form fields.

9. Defendant's conduct constitutes unlawful discrimination under 42 U.S.C. §§ 12182(a), (b)(1)(A), and (b)(2)(A).

10. Title III of the ADA requires public accommodations to provide equal access to goods and services for individuals with disabilities. 42 U.S.C. § 12182(a). Discrimination includes failing to make reasonable modifications to ensure accessibility. 42 U.S.C. § 12182(b)(2)(A)(ii).

11. Courts within this District have repeatedly found that commercial websites may constitute public accommodations under Title III, particularly where a nexus exists between the website and commercial activity. *See, e.g., Walsh v. Dania Inc*., 716 F. Supp. 3d 655, 660–62 (N.D. Ill. 2024); *Colon v. HY Supplies, Inc.*, 2023 WL 7666740, at *4 (N.D. Ill. Nov. 15, 2023). The Department of Justice has also confirmed that Title III applies to websites. *See U.S. Dep't of Justice, Guidance on Web Accessibility and the ADA* (March 2022), https://www.ada.gov/resources/web-guidance/.

12. Because Defendant's website offers retail goods directly to the public, and Defendant has defaulted, the Complaint sufficiently establishes ADA liability.

13. Plaintiff encountered additional specific access barriers on Defendant's website, including:

    a. Ambiguous or non-descriptive link text that failed to convey the purpose or destination of links;

b. Content that changed without advance warning, causing confusion for screen reader users;

c. Unclear or missing labels for interactive elements, preventing Plaintiff from understanding their function;

d. Redundant links where adjacent elements directed to the same URL, requiring unnecessary and repetitive navigation;

e. Improper or inaccurate heading hierarchy, which impaired Plaintiff's ability to efficiently navigate the Website; and

f. A requirement that certain functions and transactions be performed using a mouse, without keyboard-accessible alternatives. (Compl. ¶ 32)

14. These barriers denied Plaintiff full and equal enjoyment of the goods and services offered on the website.

## B. Injunctive Relief Is Warranted

15. The ADA authorizes injunctive relief to prevent ongoing and future discrimination. *See 42 U.S.C. § 12188(a)(1)*; *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013).

16. Courts apply a four-factor test for permanent injunctions. *Liebhart v. SPX Corp.*, 998 F.3d 772, 779 (7th Cir. 2021). Those factors are success on the merits; irreparable harm; inadequacy of legal remedies; and public interest. Here, Plaintiff satisfies each of those factors.

17. As to the first factor of success on the merits; Defendant chose to rely on an exclusively visual interface despite readily available accessibility technology widely used by other online retailers. Courts in this Circuit routinely enter default judgment where a defendant

fails to appear and the well-pleaded allegations establish liability under federal law. *See Board of Trustees v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000). Courts in this Circuit routinely enter default judgment where defendants fail to appear. *See Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). The Seventh Circuit has also recognized that Title III coverage is not limited to physical spaces and extends to websites. *See Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999); *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459-60 (7th Cir. 2001).

18. Next, there is irreparable harm because Plaintiff will continue to be denied meaningful full and equal access absent relief. Federal courts have repeatedly recognized that ongoing inaccessible websites that prevent individuals with disabilities from independently navigating pages, completing forms, or making purchases constitute a denial of full and equal access to goods and services, resulting in irreparable harm. See *Access Living of Metropolitan Chicago v. Uber Technologies, Inc.,* 351 F. Supp. 3d 1141, 1150-51 (N.D. Ill. 2018) (where the Court recognized ongoing denial of accessible services as continuing harm supporting equitable relief); *Robles v. Domino's Pizza, LLC,* 913 F.3d 898, 905 (9th Cir. 2019) (where the inaccessible website/app prevented blind user from ordering pizza — effectively an inaccessible checkout barrier); *Andrews v. Blick Art Materials, LLC,* 268 F. Supp. 3d 381, 393 (E.D.N.Y. 2017) (where the Defendant encountered inaccessible purchasing functions and barriers preventing online shopping); *National Federation of the Blind v. Target Corp.,* 452 F. Supp. 2d 946, 956 (N.D. Cal. 2006) (noting that "the inaccessibility of [the website] impedes the full and equal enjoyment of goods and services offered…").

19. As to inadequacy of legal remedies, money damages are unavailable under Title III. Title III authorizes injunctive relief for private plaintiffs. 42 U.S.C. § 12188(a)(1)

20. Finally, as to the public interest requirement; Promoting website accessibility serves the ADA's core purposes. Approximately 8.1 million Americans are visually impaired, including 260,000 in Illinois. (Compl. ¶3) Ensuring accessibility therefore has broad public impact. Allowing inaccessible websites to persist excludes an entire community from daily commerce, contrary to the ADA's mandate. *Id.* The public interest in enforcing the ADA is well established. *See United States v. AMC Entm't, Inc*., 549 F.3d 760, 773 (9th Cir. 2008) (injunctions enforcing ADA accessibility requirements serve the public interest); *Scherr* 703 F.3d 1069, 1075 (ADA violations inherently implicate strong public interests in accessibility).

21. Plaintiff's requested injunction complies with Rule 65(d), which requires specific and definite terms. Plaintiff does not seek vague incorporation of third-party standards but rather specific technical actions to ensure accessibility.

22. Courts in this District recognize that websites offering goods and services are places of public accommodation. *See Walsh,* 716 F. Supp. 3d at 660–62. The DOJ has also confirmed that Title III applies to websites (DOJ, Guidance on Web Accessibility and the ADA (Mar. 2022)).

23. Plaintiff has been and will continue to be barred from using Defendant's website absent injunctive relief. Courts recognize that ongoing ADA violations cause irreparable harm. *See Scherr,* 703 F.3d 1069, 1075. Plaintiff's inability to independently complete transactions online constitutes ongoing exclusion and humiliation and quintessential irreparable harm.

24. Legal remedies are inadequate as a matter of law because Title III of the ADA does not provide compensatory or punitive damages. *See Goodman v. Illinois Dep't of Financial & Prof'l Regulation*, 430 F.3d 432, 438 (7th Cir. 2005). Without injunctive relief, Plaintiff has no adequate remedy to ensure website accessibility.

25. The public interest strongly favors injunctive relief. The ADA was enacted to eliminate discrimination and promote equal access. Ensuring accessible websites benefits not only Plaintiff but thousands of blind consumers. Courts and the DOJ alike recognize the importance of accessibility. Moreover, the required fixes such as adding alt text, proper labels, ensuring keyboard navigation which are modest in cost relative to the harms avoided. *See Sierra Club v. Franklin Cnty. Power of Ill.*, LLC, 546 F.3d 918, 936–37 (7th Cir. 2008).

26. At this stage, Plaintiff proceeds solely in her individual capacity, not seeking class relief. Plaintiff respectfully requests entry of default judgment declaring Defendant's website inaccessible and enjoining Defendant to correct specific barriers.

27. Plaintiff seeks default judgment solely as to her individual claim under Title III of the ADA and seeks only declaratory and injunctive relief. Plaintiff does not seek class certification, damages, or relief on her state-law claim in this motion.

## C. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Enter default judgment in favor of Plaintiff;

2. Declare that Defendant's website violates Title III of the ADA;

3. Enter the permanent injunction set forth above; and

4. Reserve jurisdiction to determine Plaintiff's reasonable attorneys' fees and costs upon appropriate petition.

Because Plaintiff seeks only injunctive relief, no damages inquest is necessary.

WHEREFORE, Plaintiff respectfully requests entry of default and the entry of the attachment judgment against Defendant.

Dated: April 27, 2026

Respectfully Submitted,

By: */s/ Michael Ohrenberger*
Michael Ohrenberger, Esq.
4903 Avenue N,
Brooklyn, NY 11234
O: (844) 731-3343
D: (718) 281 5496
Email: mohrenberger@ealg.law
Equal Access Law Group PLLC
Attorney for Plaintiff